## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| TODD HOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. _____ |
| MAINE DEPARTMENT OF | ) |
| CORRECTIONS, | ) |
| Martin Magnusson, Lars Olsen, | ) |
| Rodney Bouffard, Mary Ann Saar, | ) |
| Barbara Heath, Scott Dewitt, | ) |
| Jeffrey Campbell, Shirley J. Antonowicz, | ) |
| Robert J. Allenwood, James M. Hogan, | ) |
| [FIRST NAME UNKNOWN] Janasek, | ) |
| Matthew Nee, Scott McDonald, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, Todd Hood, by and through his attorneys, and complains as follows:

### DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure.

### PARTIES AND JURISDICTION

1.     The Plaintiff, Todd Hood, is a resident of the State of Maine and at all times material herein was a citizen of the United States and was a minor child, and not obtaining the age of eighteen years until 2004.

2.      During times material hereto until June 4, 1999, the juvenile correctional facility located in South Portland, Maine was named the Maine Youth Center; after that date, pursuant to 34-A M.R.S.A. § 3801, the name of the facility was changed to the Southern Maine Juvenile Facility, and later, the Long Creek Youth Development Center (revised 2001). For purposes of this Complaint, the facility will be referred to as Long Creek Youth Development Center ("LCYDC").

3.      The Defendant, Martin Magnusson, during the time material herein was the Commissioner of Corrections for the State of Maine located at State Office Building, Augusta, Maine and he is sued in his individual capacity.

4.      The Defendant, Lars Olsen, during a portion of the time material herein was the Superintendent of LCYDC, located at 675 Westbrook Street, South Portland, Maine and he is sued in his individual capacity.

5.      The Defendant, Rodney Bouffard, during a portion of the time material herein was the Superintendent of LCYDC, located at 675 Westbrook Street, South Portland, Maine and he is sued in his individual capacity.

6.      The Defendant, Mary Ann Saar, during a portion of the time material herein was the Associate Commissioner for Juvenile Services for the State of Maine, located at State Office Building, Augusta, Maine and during a portion of the time material herein was the Director of Rehabilitation and Admission Programs and during a portion of the time material herein was the Assistant Superintendent of LCYDC, located at 675 Westbrook Street, South Portland, Maine, and she is sued in her individual capacity.

7.      The Defendant, Barbara Heath, at all times material herein was a psychologist for LCYDC, located at 675 Westbrook Street, South Portland, Maine and she is sued in her individual capacity.

8.      The Defendant, Scott Dewitt, during a portion of the time material herein, was a Training School Counselor Supervisor for LCYDC, located at 675 Westbrook Street, South Portland, Maine, and he is sued in his individual capacity.

9.      The Defendant, Jeffrey Campbell, during a portion of the time material herein, was a Training School Counselor for LCYDC, located at 675 Westbrook Street, South Portland, Maine, and he is sued in his individual capacity.

10.      The Defendant, Shirley Antonowicz, during a portion of the time material herein, was a Training School Counselor for LCYDC, located at 675 Westbrook Street, South Portland, Maine, and she is sued in her individual capacity.

11.      The Defendant, Robert J. Allenwood, during a portion of the time material herein, was a Training School Counselor for LCYDC, located at 675 Westbrook Street, South Portland, Maine, and he is sued in his individual capacity

12.      The Defendant, James M. Hogan, during a portion of the time material herein, was a Training School Counselor for LCYDC, located at 675 Westbrook Street, South Portland, Maine, and he is sued in his individual capacity

13.      The Defendant, [first name unknown] Janasek, during a portion of the time material herein, was a Training School Counselor for LCYDC, located at 675 Westbrook Street, South Portland, Maine, and he is sued in his individual capacity

14. The Defendant, Matthew Nee, during a portion of the time material herein, was a Training School Counselor for LCYDC, located at 675 Westbrook Street, South Portland, Maine, and he is sued in his individual capacity

15. The Defendant, Scott McDonald, during a portion of the time material herein, was a Training School Counselor Supervisor for LCYDC, located at 675 Westbrook Street, South Portland, Maine, and he is sued in his individual capacity

16. At all times material hereto based upon their official statuses as employees of the State of Maine Department of Corrections or statuses as being under contract with the State of Maine Department of Corrections, the Defendants were operating under the color of state law.

17. As a result of their official capacity at all times material herein the above-named Defendants had a duty as to the Plaintiff, Todd Hood.

18. Venue is proper in the District of Maine under 28 U.S.C. § 1391(b) because at all times material herein the incidents complained of took place in the City of South Portland, County of Cumberland, State of Maine or City of Augusta, County of Kennebec, State of Maine, commencing on or about November 11, 1998 and continuing until Plaintiff was "bound over" to an adult correctional facility at the age of 18.  Under Rule 3(b) of the Rules of this Court, this action is properly filed in Portland because a substantial portion of the events at issue occurred in Cumberland County.

19. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because this action is brought pursuant to Federal Civil Rights Law, 42 U.S.C. § 1983 et seq.,b

the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States

Constitution, the Federal Juvenile Justice and Delinquency Prevention Act, 34

U.S.C. § 11101, et seq., the Individuals With Disabilities Education Act, 20 U.S.C. §

1400, et seq., and the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq..

20.    This action is also brought pursuant to State Law under the Maine

Constitution, the Maine Juvenile Code, 15 M.R.S.A. § 3001, et seq., and the Maine

Corrections Code, Subchapter V, Maine Youth Center, 34-A M.R.S.A. § 3801, et seq.

This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. §

1367(a).

## STATEMENT OF FACTS: GENERAL

21.    Beginning in November of 1998, when Plaintiff was 11 years old, and

continuing until he was "bound over" to an adult corrections facility at age 18,

Plaintiff was intermittently confined to LCYDC.

22.    For all periods material hereto, the stated purpose of the Maine

Juvenile Code, which allowed Plaintiff to be removed from the custody of his

parents once adjudicated as having committed a juvenile crime, was "to secure for

any juvenile removed from the custody of the juvenile's parents the necessary

treatment, care, guidance, and discipline to assist that juvenile in becoming a

responsible and productive member of society." 15 M.R.S.A. § 3002(1)(D).

23.    For all periods material hereto, the statutorily established purpose of

LCYDC was "to rehabilitate" adjudicated juveniles, 34-A M.R.S.A. § 3802(1), which

it must accomplish by employing the disciplines of "education, casework, group

work, psychology, psychiatry, medicine, nursing, applied technology training, and religion as they are related to human relations and personality development" 34-A M.R.S.A. § 3802(2).

24.     For all periods material hereto, security measures in the form of physically restrictive construction and intensive staff supervision were allowed, but only if appropriate to accomplish the purposes of the statute. 34-A M.R.S.A. § 3802(2).

25.     For all periods material hereto, the Department of Corrections was statutorily responsible for ensuring the provision of services necessary to support and rehabilitate juveniles who come into contact with the Juvenile Court, 34-A M.R.S.A. § 7001(1)(B); for meeting the service needs for rehabilitation of children adjudicated as having committed juvenile crimes, 34-A M.R.S.A. § 7002(2); and for training personnel to perform these functions, 34-A M.R.S.A. § 7002(5).

## EXCESSIVE USE OF ISOLATION

26.     During all times material hereto, it was the policy, custom, and practice of LCYDC to employ isolation, defined as physically removing certain children from the regular program and from contact with other children, by confinement alone in a locked cell for periods ranging from hours to months.

27.     Prior to 1991, by Maine statute, this practice of isolation was termed "seclusion"; since 1991, this practice of isolation was termed "placing a child under observation" 34-A M.R.S.A. § 3809.

28. By statute, a child may not be placed in isolation unless he "presents a high likelihood of imminent harm to that juvenile or to others, presents a substantial and imminent threat of destruction of property, or demonstrates a proclivity to be absent from the facility without leave ... the juvenile may be placed under observation if the juvenile demonstrates that anything less restrictive would be ineffectual for the control of the juvenile's behavior."  34-A M.S.A. § 3809(1).

29. The conditions under which a juvenile is placed under observation must conform with all applicable federal and state standards relating to the health and safety of clients in correctional facilities, 34-A M.R.S.A. 3809(2)(B).

30. The time a child is held in isolation "may not exceed the period of time necessary to alleviate and prevent the reoccurrence" of imminent harm to the child or others, substantial and imminent destruction of property, or escape from the facility, and "it may not be used as punishment," 34-A M.R.S.A. § 3809(2)(C).

31. The staff of LCYDC knew or should have known that the Plaintiff had been diagnosed as suffering from PTSD, depression, conduct disorder and anxiety, among other serious conditions.

32. Plaintiff was routinely placed in isolation for behavior which did not meet the statutory threshold of high likelihood of imminent harm and, when a less restrictive alternative was available.

33. Plaintiff was routinely placed in and retained in isolation based on a determination that he presented a high likelihood of imminent harm to himself or others which determination was improperly entrusted to lay people, not trained

psychiatrists or psychologists, without any hearing and without written findings showing an adequate basis to justify the decision.

34.    Plaintiff was routinely held in conditions which did not conform to applicable federal and state standards relating to health and safety.

35.    Plaintiff was routinely held for periods which exceeded the time needed to alleviate the high likelihood of imminent harm and was placed in isolation and held in isolation for the specifically proscribed purpose of punishment.

36.    Confinement in the isolation unit meant being placed a locked cell, approximately eight by ten feet with a metal bench bed with a thin mattress, combination sink/toilet, concrete floor, and light panel in the wall; there was an opaque exterior window in some cells, but no clear windows, little ventilation, excessive heat in the summer, and inadequate heat in the winter.

37.    Children, including Plaintiff, were held in isolation for 23 to 24 hours per day; they received reduced or no educational services or other programming during their time in isolation; they received a maximum of one hour per day of major muscle movement, but only if staff opted to allow it; they were often prohibited from talking with the other children who were also being held in isolation; they could talk with staff only if staff initiated the exchange; they were prohibited from trying to look out of the door of the cell; and they had no form of recreation, entertainment, or diversion except for limited reading material, which was only available as a privilege at the discretion of the Training School Counselors.

38.     It was the custom and practice of the staff who held children in isolation to further discipline them by depriving them of exercise opportunities, showers, mattresses, bedding, clothing, and reading material, by substituting "bag" meals for regular meals, by withholding or delaying meal trays, and by using a variety of physical restraints.

39.     It was custom and practice of the staff who held children in isolation to impose a "step" system and ICU rules, which had to be followed to "gain good time" in order to earn a release from isolation.  Contrary to statute, this system was punitive in nature, arbitrary, imposed without due process, used for retribution, and was imposed with deliberate indifference to the statutory requirement that confinement in isolation may not exceed the period of time necessary to alleviate a high likelihood of imminent harm to the juvenile or others.

40.     Plaintiff was subjected to excessive use of isolation in a manner which repeatedly violated the statutory standards for its use, was negligent, was imposed for purposes of punishment, was imposed with deliberate indifference to its impact on Plaintiff's health, was employed in a manner which represented a substantial departure from accepted professional judgment, and violated Plaintiff's Constitutional rights.

41.     On a regular and consistent basis, Plaintiff was subjected to being held in isolation for days on end.

42.     On several occasions, Plaintiff was subjected to being bound in restraints for hours on end.

43.     On multiple occasions, Plaintiff's clothing and bedding were revoked.

44.     This pattern of excessive use of isolation continued throughout Plaintiff's confinements at LCYDC.

45.     Prolonged and total isolation such as that practiced at LCYDC was emotionally and psychologically debilitating for Plaintiff and did not serve goals of treatment or rehabilitation.

46.     The quality of confinement in isolation at LCYDC for the duration and under the conditions experienced by Plaintiff violated the Eighth Amendment's ban on cruel and unusual punishment.

47.     Contrary to the standards of accepted professional practices, Plaintiff did not receive appropriate psychological and medical services while in isolation.

48.     Contrary to the standards of accepted professional practices, Plaintiff was held in isolation for longer than three hours without being joined by a staff member.

49.     Contrary to the standards of accepted professional practices, Plaintiff was not released from isolation as soon as he was sufficiently under control so as to no longer pose a serious and immediate danger to himself or others.

50.     Contrary to the standards of accepted professional practices, consecutive periods of isolation were used to evade the spirit and purpose of the law.

51.     Contrary to the standards of accepted professional practices, Plaintiff was not afforded any elementary procedural due process prior to confinement in isolation.

52.     Contrary to the standards of accepted professional practices, the decision to place Plaintiff in isolation was not subject to regular, periodic review by professionally competent treatment personnel familiar with the effects of continuing isolation on Plaintiff.

53.     Prolonged confinement in isolation had serious, entirely foreseeable, detrimental effects upon the mental health of Plaintiff: because his problems were not being dealt with during the period of isolation, his behavior deteriorated and his emotional development was inhibited; due to the duration and conditions of confinement in isolation and due to the adversarial, non-professional dynamic between Plaintiff and staff, Plaintiff began to experience severe emotional problems, including: anxiety, depression, and panic, which caused him to persist in emotional outbursts, which were then used by staff to justify his continued isolation.

54.     Due to the lack of supervision and poorly trained staff, Plaintiff learned maladaptive coping habits such as aggression, intimidation, and violence, as modeled by staff.

55.     Plaintiff resorted to self-harm and acting-out with aggression as a means of establishing a modicum of control over his situation.

56.     LCYDC staff did not respond with appropriate mental health treatment; instead, they increased Plaintiff's isolation, and denied him meaningful mental health treatment or intervention, further exacerbating Plaintiff's mental health problems.

57.     It was foreseeable that prolonged isolation in this environment would result in severe damage to Plaintiff's emotional development and mental health, as well as physical pain and suffering.

58.     By statute, LCYDC's use of isolation was not to exceed 72 hours without approval of the Commissioner of Corrections and that approval must be kept on file.

59.     The Commissioner of Corrections and his agents or assistants were in charge of the imposition of isolation in excess of 72 hours and was responsible for determining policies relating to extending isolation beyond 72 hours.

60.     The Commissioner and his agents or assistants allowed impermissible isolation in excess of 72 hours, failed to remedy the violation, and/or created a policy or custom under which such practices occurred or were allowed to continue.

61.     The Commissioner and his assistant or agents were grossly negligent in managing subordinates who caused the unlawful conditions or events, and demonstrated deliberate indifference to the constitutional rights of Plaintiff by failing to act on knowledge of unconstitutional practices.

62.     As a result of excessive confinement in isolation; Plaintiff suffered injuries and damages including but not limited to: post traumatic stress disorder, exacerbation of depression and anxiety, and pain and suffering.

63.     Plaintiff has suffered, and will continue to suffer and incur additional damages in the future, including but not limited to: pain and suffering, lost wages

12

and future earning potential, reasonable and necessary medical treatment expenses, and continued mental health issues.

## EXCESSIVE USE OF RESTRAINTS

64.     During all times material hereto, it was the policy, custom, and practice of LCYDC to use mechanical and/or plastic "flexi" restraints on children designated as "special management clients."

65.     During all times material hereto, the Department of Corrections policy on the use of restraints was "limited to those situations when it is apparent that the client presents a real and immediate threat to the safety of the client or others or the security of the facility and only when no other reasonable alternative exists."

66.     Pursuant to that policy, restraints were to be applied with the least amount of force necessary and in the least restrictive manner possible.

67.     Pursuant to that policy, "[u]nder no condition shall restraints be used to punish or discipline clients."

68.     Pursuant to that policy, "[u]nder no condition shall restraints be used to ... restrain clients in an unnatural position."

69.     Pursuant to that policy, placement of a child in restraints is videotaped, unless emergency circumstances prevent it.

70.     Pursuant to that policy, restraints should not be used for periods of time exceeding thirty minutes.

71.     Plaintiff was placed in restraints for behavior that did not meet the threshold of immediate and real threat to his own safety or that of others, or when reasonable alternatives existed.

72.     Plaintiff was subjected to excessive force in the application of restraints.

73.     Restraints were used on Plaintiff as a form of punishment.

74.     Restraints were used on Plaintiff which held him in an unnatural position.

75.     LCYDC Directors and staff breached their duties to Plaintiff by applying and sustaining Plaintiff in restraints without adequate training or knowledge and skill necessary to safely restrain Plaintiff.

76.     Plaintiff was routinely placed in restraints for periods exceeding 30 minutes, and long after any real or immediate threat to the safety of Plaintiff or others, if any had existed, had ceased.

77.     Plaintiff's placement in restraints was not adequately supervised by medical professionals and was delegated to untrained, or under-trained, lay people.

78.     The determination that Plaintiff was no longer a threat to the safety of himself or others was improperly delegated to untrained, or under-trained, lay people, who forced him to yield by "giving his commitment."

79.     As a result of the improper and excessive use of restraints, Plaintiff suffered pain and injuries.

80.     Excessive confinement in restraints had serious, entirely foreseeable, detrimental effects on the mental health of Plaintiff.

81.     As a result of the improper and excessive use of restraints, Plaintiff began to experience severe emotional problems, including: anxiety, panic, self-harm, and increased aggression.

82.     LCYDC staff failed to respond with mental health treatment or support, further exacerbating Plaintiff's mental health problems.

83.     As a direct and proximate result of Defendant's prolonged confinement of Plaintiff in restraints, Plaintiff suffered severe damage to his emotional development and mental health, mental anguish, and physical pain and suffering, which endures today.

## DENIAL OF A RIGHT TO TREATMENT

84.     During all times material hereto, state statute charged the State of Maine with the duty to attempt to rehabilitate children adjudged to have committed a juvenile offense.

85.     Pursuant to this duty, Plaintiff had a right to adequate treatment.

86.     Pursuant to the Fourteenth Amendment of the United States Constitution, and Article I of the Maine Constitution, Plaintiff had a right to treatment.

87.     The right to treatment and duty to attempt rehabilitation requires the State to meet minimal standards including: individual assessment to serve as the basis for an individual treatment plan; periodic evaluation and revision of

individual treatment plans by trained social work or psychological staff; access to mental health services; education in an accredited school, including utilization of special education teachers, if applicable, and vocational education; and rehabilitative treatment designed to reintegrate the child into society.

88.     LCYDC failed to provide Plaintiff with treatment that met these minimal standards.

89.     Plaintiff was not afforded mental health treatment even in times of obvious crisis.

90.     During all times material hereto, the culture at LCYDC was punitive rather than rehabilitative, and Plaintiff was consistently punished, rather than treated or rehabilitated.

91.     Plaintiff did not receive treatment which would have been consistent with the purposes of confinement.

92.     As a direct and proximate result of Defendants' violation of Plaintiff's right to treatment, Plaintiff suffered injuries and damages including: post traumatic stress disorder, exacerbation of his depression and anxiety, pain and suffering, deprivation of educational services, and deprivation of rehabilitative services.

93.     Plaintiff continues and will continue to suffer and incur additional damages, including but not limited to: pain and suffering, loss of wages and future earning capacity, reasonable and necessary medical and treatment expenses, expenses of remedial education, and expenses for reintegration into society.

## FAILURE TO PROVIDE EDUCATIONAL SERVICES

94.     During all times Plaintiff was in the custody of LCYDC, Defendants had a duty to attempt to rehabilitate him by employing specified disciplines, including education.

95.     As a person between the ages of 5 and 20, Plaintiff had a statutory right to enroll in a public school to receive an education.

96.     Plaintiff's right to a public education was denied without procedural due process.

97.     Plaintiff was qualified for special education services to allow him to benefit from his education.

98.     Defendants knew or should have known that Plaintiff had been identified as a student in need of special education services.

99.     Defendants had a duty to identify students with disabilities in order to ensure they would receive appropriate educational services.

100.    Defendants had a duty to provide special education services to Plaintiff.

101.    Defendants deprived Plaintiff of his right to public education without due process.

102.    Defendants deprived Plaintiff of all educational services when he was held in isolation.  When Plaintiff was not in isolation, Defendants failed to provide him adequate educational services.

103.    As a direct and proximate result of Defendants' failure to provide Plaintiff with the requisite educational services and educational opportunities, including but not limited to special education services, Plaintiff suffered severe harm during a formative period of his development, including but not limited to: lack of academic progress while committed to LCYDC, exacerbation of Plaintiff's depression, foreclosure of school-aged educational opportunities, and future lost wages and earning potential.

## FAILURE TO PROVIDE ADEQUATE STAFF

104.    The employment by LCYDC of persons whose personalities, backgrounds, or lack of qualifications rendered them likely to harm the children in their care either physically or psychologically, absent any attempt to administer appropriate psychological testing or psychiatric interviews, constitutes a violation of Plaintiff's state and federal rights to treatment.

105.    LCYDC failed to implement a system to adequately screen prospective employees to determine their psychological suitability for working with children.

106.    LCYDC failed to implement a system of training or education for employees to ensure they provided individualized treatment to children.

107.    LCYDC failed to train or educate employees on the use of force in pre-employment interviews.

108.    LCYDC failed to train or educate employees on avoidance of harm to children in their care, either physically or psychologically, or in the mental health needs of disabled adolescents.

109.    Defendants were at all times responsible for the employment and training practices at LCYDC.

110.    As a result of their failure to adequately screen prospective employees and to provide adequate pre-service training, it was foreseeable that children in their care would be harmed, both physically and psychologically.

111.    LCYDC employees and directors did inflict serious physical and psychological harm on Plaintiff in repeated and routine instances while he was in their care.

112.    Plaintiff was harmed both physically and psychologically as a proximate result of the failure of Defendants to comply with the duty of care owed to him.

**SEXUAL ASSAULT**

113.    In or about April of 2000, Plaintiff was 13-years-old.

114.    At the time, Plaintiff had not yet been commited to State custody.

115.    Defendant confined Plaintiff to a cell in Cumberland County Jail ("CCJ"), where he was sexually assaulted by two fellow inmates, one of whom was an adult.

116.    Plaintiff immediately reported the assault to the juvenile teacher, Ms. Moe, who elevated his report.

117.    Defendant transferred Plaintiff from the unit at CCJ, to LCYDC.

118.    Plaintiff was not offered, nor provided with, medical attention.

119.    Plaintiff was not offered, nor provided with, mental health counseling.

19

120.    Defendant did not investigate Plaintiff's reports of sexual assault, and on information and belief, Defendant did nothing with Plaintiff's reports.

121.    On or about April 31, 2002, Plaintiff was sexually assaulted by an adult detainee at LCYDC.

122.    At the time, Plaintiff was committed to State custody.

123.    On information and belief, the man who assaulted Plaintiff was in LCYDC on charges of sexual assault.

124.    Defendant knew or should have known that Plaintiff's attacker was a danger to vulnerable minors.  He was being held at the time on sexual assault charges.

125.    Plaintiff immediately reported the assault to Defendant Antonowicz.

126.    Defendants transported Plaintiff to Maine Medical Center, where a so-called "rape kit" was performed.

127.    Plaintiff spent more than a week in the LCYDC infirmary, recovering from his injuries.

128.    Following the assault, Defendant took no action against Plaintiff's assailant.

129.    Plaintiff was forced to see his assailant on a near-daily basis.

130.     Defendant failed to provide Plaintiff with counseling or mental heath treatment to cope with the trauma from the sexual assault.

## SEXUAL ACTS TOWARD A MINOR

131.    During his confinement at LCYDC, Defendants consistently stripped Plaintiff naked and committed other acts of assult upon Plaintiff.

132.    Defendants unnecessarily and repeatedly touched and examined Plaintiff's genitals and anus, prior to placing him in restraints.

133.    After placing Plaintiff in restraints, Defendants unnecessarily and repeatedly touched and examined Plaintiff's genitals and anus, claiming they were again "searching for contraband," even when Plaintiff clearly had no opportunity or means by which to obtain or conceal any contraband on account of being in physical restraints, naked, and only moments earlier, physically "searched for contraband."

134.    Defendants' unconsented and repeated physical touching of Plaintiff's genitals and anus while forcibly stripping him of his clothing and restraining him was done with the intent to cause Plaintiff physical pain and discomfort, as well as to offend, degrade and humiliate Plaintiff.

135.    Defendants' conduct constituted assault as well as sexual acts toward a minor, as defined by 14 M.R.S. § 752-C, and 17-A M.R.S. § 251(1).

## DISABILITY

136.    Beginning early in his confinement at LCYDC, Defendants' brutal treatment of Plaintiff caused and/or exacerbated severe emotional and mental disabilities, including but not limited to: severe PTSD, depression, and anxiety, among other conditions.

137.    Throughout his confinement at LCYDC, Defendants' treatment of Plaintiff further exacerbated these conditions.

138.    Since his release from LCYDC in 2005, Plaintiff has been suffering from multiple severe emotional and mental disabilities caused by or exacerbated by Defendants' treatment of him at LCYDC, including but not limited to: severe PTSD, depression, and anxiety, among other conditions.

139.    Due to his disabilities, Plaintiff's ability to function in society was severely limited, and he was heretofore prevented from protecting his rights and bringing this action against Defendants.

### COUNT I: DEFENDANT MARTIN MAGNUSSON

140.    Plaintiff restates and realleges the statements contained in paragraphs 1-139 of this complaint.

141.    As Commissioner of Corrections for the State of Maine, Defendant Martin Magnusson was statutorily responsible for the general supervision, management, and control of clients of LCYDC (34-A M.R.S.A. § 1402(1)), for ensuring that LCYDC met applicable federal and state standards relating to the health and safety of clients in the facility (34-A M.R.S.A. § 1401(7)), for ensuring the provision of services necessary to support and rehabilitate Plaintiff (34-A M.R.S.A. § 7002), and for training personnel to perform that function (34-A M.R.S.A. § 3802).

142.    During the time relevant hereto while he served as Commissioner of Corrections, Defendant Magnusson failed to properly train subordinates, failed to control subordinates with a history of misbehavior, failed to ensure that LCYDC

met applicable federal and state standards relating to the health and safety of clients in the facility, including Plaintiff's health and safety, failed to prevent and protect vulnerable juvenile detainees from sexual abuse, and failed to correct unconstitutional practices or conditions at LCYDC, including but not limited to: excessive use of isolation, excessive use of restraints, inappropriate sexual contact, assault, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, denial of treatment, lack of educational services, and lack of appropriate staff.

143.    As Commissioner of Corrections, Defendant Magnusson routinely extended Plaintiff's time in isolation beyond 72 hours, and/or had knowledge that his subordinates and and agents were extending Plaintiff's time in isolation with no reason given or with the stock phrase that he "continue[s] to be a danger to himself and others" without undertaking the inquiry necessary to authorize continued use of isolation.

144.    As a direct and proximate result of Defendant Magnusson's actions as to excessive use of isolation, Plaintiff was confined in isolation for excessive periods of time, under conditions which did not conform to applicable federal and state standards, and under conditions which constituted cruel and unusual punishment, all in violation of his rights guaranteed in the Eighth Amendment to the United States Constitution, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and in violation of the laws of the State of Maine.

145.    As a direct and proximate result of Defendant Magnusson's actions as to excessive use of restraints, Plaintiff was held in restraints for excessive periods of time, under conditions which did not meet applicable state policies, and under conditions which constituted cruel and unusual punishment, all in violation of his rights guaranteed in the Eighth Amendment to the United States Constitution, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and in violation of the laws of the State of Maine.

146.    As a direct and proximate result of Defendant Magnusson's actions as to denial of the right to treatment, Plaintiff was denied disciplinary, mental health, educational, and rehabilitative treatment owed by the State as a quid pro quo to justify confinement under circumstances in which the conventional limitations of the criminal process are inapplicable, all in violation of his rights guaranteed in the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and in violation of the laws of the State of Maine.

147.    As a direct and proximate result of Defendant Magnusson's actions as to denial of educational services, particularly while Plaintiff was held in isolation, Plaintiff was denied educational services required of the State, in violation of his rights guaranteed in the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and in violation of the laws of the State of Maine.

148.    As a direct and proximate result of Defendant Magnusson's actions as to failure to provide adequately trained and supervised staff, Plaintiff was subjected to physical and psychological harm, all in violation of his rights guaranteed in the

Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and in violation of the laws of the State of Maine.

149.    As a direct and proximate result of Defendant Magnusson's breach of his statutory duty, Plaintiff suffered and continues to suffer serious mental anguish, psychological and emotional distress, physical pain and suffering, and lost earning capacity, some or all of which may be permanent.

150.    The actions of Defendant Magnusson, acting under color of state law, deprived Plaintiff of his rights, privileges, and immunities under the laws and the United States Constitution; in particular, the right to be secure in his person, the right to be free from cruel and unusual punishment, and the right to due process.

151.    By these actions, Defendant Magnusson has deprived Plaintiff of rights secured by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, thereby causing Plaintiff harm resulting in damages.

## COUNT II:  DEFENDANT MARY ANN SAAR

152.    Plaintiff realleges the statements contained in Paragraphs 1-151 as if more fully set forth herein.

153.    As Associate Commissioner of Corrections for Juvenile Services for the State of Maine, Defendant Mary Ann Saar was delegated powers by the Commissioner which made her statutorily responsible for juvenile services, including but not limited to: general supervision, management, and control of clients at LCYDC (34-A M.R.S.A. § 1402(1)), for ensuring that LCYDC met

25

applicable federal and state standards relating to the health and safety of clients in the facility, for ensuring the provision of services necessary to support and rehabilitate Plaintiff, and for training personnel to perform that function (34-A M.R.S.A. § 3802).

154.    Plaintiff realleges the statements contained in Paragraphs 133-142 above, however substituting the words "Associate Commissioner of Corrections" for "Commissioner of Corrections," and "Mary Ann Saar" or "Saar" in each place the words "Martin Magnusson" or "Magnusson" appear therein.

155.    During the time relevant hereto while she served as Associate Commissioner of Corrections for Juvenile Services, Defendant Saar failed to properly train subordinates, failed to control subordinates with histories of misbehavior, failed to ensure that the LCYDC met applicable federal and state standards relating to the health and safety of clients in the facility, including Plaintiff, and failed to correct unconstitutional practices or conditions at LCYDC, including but not limited to: excessive use of isolation, excessive use of restraints, inappropriate sexual contact, assault, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, denial of treatment, lack of educational services, and lack of appropriate staff.

156.    As Associate Commissioner of Corrections for Juvenile Services, Defendant Saar routinely extended Plaintiff's time in insolation, and had knowledge of others doing the same, from time to time, by signing her authorization on inter-departmental memoranda applicable to multiple children, with no reason given or

26

with the stock phrase that Plaintiff is a "danger to self and others," without undertaking the inquiry necessary to authorize continued use of isolation.

157.   By these actions, Defendant Saar has deprived Plaintiff of rights secured by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, thereby causing Plaintiff harm resulting in damages.

## COUNT III:  DEFENDANT LARS OLSEN

158.   Plaintiff realleges the statements contained in Paragraphs 1-157 as if more fully set forth herein.

159.   As Superintendent of the Maine Youth Center, Defendant Lars Olsen was the chief administrative officer of LCYDC, statutorily responsible for rehabilitating Plaintiff and other clients of LCYDC (34-A M.R.S.A. § 3802(1)), through use of the disciplines of education, casework, group work, psychology, psychiatry, medicine, nursing, applied technology training, and religion; as it related to the LCYDC, he was also responsible for ensuring that LCYDC met applicable federal and state standards relating to the health and safety of clients in the facility, and for ensuring the provision of services necessary to support and rehabilitate Plaintiff, and for training personnel to perform that function (34-A M.R.S.A § 3802).

160.   During the time relevant hereto while he served as Superintendent of LCYDC, Defendant Olsen failed to properly train subordinates, failed to control subordinates with histories of misbehavior, failed to ensure that LCYDC met

applicable federal and state standards relating to the health and safety of clients in the facility, including Plaintiff, and failed to correct unconstitutional practices or conditions at LCYDC, including but not limited to: excessive use of isolation, excessive use of restraints, inappropriate sexual contact, sexual assault, assault, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, denial of treatment, lack of educational services, and lack of appropriate staff.

161.    As Superintendent, Defendant Olsen was statutorily required to approve placing Plaintiff in isolation each time he was so placed (34-A M.R.S.A. § 3809(2)(A)).

162.    As Superintendent, Defendant Olsen was statutorily required to ensure that Plaintiff was placed in isolation only when Plaintiff's behavior presented a high likelihood of imminent harm to Plaintiff or to others, presented a substantial and imminent threat of destruction of property, or demonstrated a proclivity to be absent from the facility without leave, and as Superintendent, he was required to ensure that Plaintiff not be held in isolation longer than necessary to alleviate and prevent the reoccurrence of that behavior, with the very specific statutory directive that isolation may not be used as punishment (34-A M.R.S.A. § 3809(2)).

163.    As Superintendent, Defendant Olsen had statutory responsibilities to ensure a physician or other medical staff visited Plaintiff each time isolation exceeded 12 hours, and at least once in each succeeding 24-hour period, and had a

statutory responsibility to direct LCYDC staff to develop a plan for the further care of the juvenile each time placement in isolation exceeded 24 hours (34-A M.R.S.A. § 3809(2)).

164.   As Superintendent, Defendant Olsen had a statutory responsibility to ensure that Plaintiff was under constant sight and sound supervision by LCYDC staff if he thought it was necessary to prevent imminent harm to Plaintiff (34-A M.R.S.A. § 3809(2)(H)).

165.   Defendant Olsen routinely approved placement and retention of Plaintiff in isolation for purposes of punishment or other purposes not authorized by statute.

166.   Defendant Olsen routinely approved or allowed Plaintiff to be kept in isolation for periods in excess of the time required to alleviate behavior which presented a high likelihood of imminent harm.

167.   Defendant Olsen failed to correct conditions of isolation which did not conform with applicable federal and state standards relating to the health and safety of clients in LCYDC.

168.   Defendant Olsen failed to ensure that a physician or other medical staff visited Plaintiff and made recommendations as required by statute once his time in isolation exceeded 12 hours.

169.   Defendant Olsen routinely and consistently failed to direct appropriate LCYDC staff to develop a plan for the further care of Plaintiff each time placement in isolation exceeded 24 hours.

170.    Defendant Olsen routinely approved keeping Plaintiff in isolation, or allowed others to keep Plaintiff in isolation, or requested that others extend Plaintiff's time in isolation for times greatly in excess of 72 hours, even though he knew or should have known that the statutorily mandated requirements for holding a child in isolation were not being followed.

171.    Defendant Olsen failed to ensure that staff complied with policies and procedures for placement of children in isolation and failed to have specific policies governing when a child would be placed in isolation and how a child would be removed from isolation.

172.    As a direct and proximate result of Defendant Olsen's actions as to excessive use of isolation, Plaintiff was confined in isolation for excessive periods of time, under conditions which did not conform to applicable federal and state standards, and under conditions which constituted cruel and unusual punishment, all in violation of his rights guaranteed in the Eighth Amendment to the United States Constitution, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and in violation of the laws of the State of Maine.

173.    Accepted practices mandate that a child should be restrained by mechanical means only as a precaution against escape, for medical reasons by direction of the medical officer, or to prevent self-injury or injury of others, and once applied, should only continue until the child is calm and compliant.

174.    Defendant Olsen knew or should have known that restraints were being applied to Plaintiff frequently, as an improper means of behavior control, for

punishment, or for other reasons not sanctioned by written policies, and for time periods far in excess of that even minimally justified by Plaintiff's behavior.

175.    As a direct and proximate result of Defendant Olsen's actions as to excessive use of restraints, including failure to take action to enforce the written policy, Plaintiff was held in restraints for excessive periods of time, under conditions which did not meet applicable state policies, and under conditions which constituted cruel and unusual punishment, all in violation of his rights guaranteed in the Eighth Amendment to the United States Constitution, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and in violation of the laws of the State of Maine.

176.    Accepted practices require an individualized assessment of every child upon commitment to LCYDC and the development of a personalized treatment plan for each child; additionally, by statute the Superintendent is required to direct the development of a treatment plan if a child is held in isolation for 24 hours or more, and that plan must be revised as needed to meet the changing needs of the juvenile (34-A M.R.S.A. § 3809(2)(E)).

177.    Either Defendant Olsen failed to direct the development of treatment plans for Plaintiff, or, if he did so direct, he knew or should have known that the required treatment plans were not being developed or revised for Plaintiff.

178.    Defendant Olsen knew or should have known that psychologist Barbara Heath failed to adequately diagnose and treat Plaintiff's mental health issues and was recklessly indifferent to his medical conditions, and that she and

other staff failed to provide the statutorily required supervision of Plaintiff's excessive time in isolation and restraints.

179.    Defendant Olsen failed to provide educational services to Plaintiff, particularly when Plaintiff was held in isolation, in violation of state law and failed to ensure that he was provided with the special education services to which he was entitled.

180.    As a direct and proximate result of Defendant Olsen's actions as to denial of the right to treatment, Plaintiff was denied disciplinary, mental health, educational, and rehabilitative treatment owed by the State as a quid pro quo to justify confinement under circumstances in which the conventional limitations of the criminal process are inapplicable, all in violation of his rights guaranteed in the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and in violation of the laws of the State of Maine.

181.    Defendant Olsen, as Superintendent of LCYDC, hired certain individuals who were unqualified to work at LCYDC; failed to ensure that staff were adequately trained for the work they were to do; failed to supervise staff on the job, particularly where he knew or should have known of certain staff inadequacies and over-stressed staff working multiple over-time shifts; failed to provide staff with formal policies and procedures to guide their actions; and failed to timely terminate staff who were clearly unfit for service.

182.    As a direct and proximate result of Defendant Olsen's actions as to failure to provide adequate and adequately trained and supervised staff, Plaintiff

was subject to physical and psychological harm, all in violation of his rights guaranteed in the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and in violation of the laws of the State of Maine.

183.   As a direct and proximate result of Defendant Olsen's breach of his statutory duty, Plaintiff suffered and continues to suffer serious mental anguish, psychological and emotional distress, physical pain and suffering, and lost earning capacity, some or all of which may be permanent.

184.   The actions of Defendant Olsen, acting under color of state law, deprived Plaintiff of his rights, privileges, and immunities under the laws and Constitution of the United States; in particular, the right to be secure in his person, the right to be free from cruel and unusual punishment, and the right to due process.

185.   By these actions, Defendant Olsen has deprived Plaintiff of rights secured by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, thereby causing Plaintiff harm resulting in damages.

## COUNT IV:  DEFENDANT RODNEY BOUFFARD

186.   Plaintiff realleges the statements contained in Paragraphs 1-185 as if more fully set forth herein.

187.   Plaintiff realleges the statements contained in Paragraphs 159-184 above, however substituting the words "Rodney Bouffard" or "Bouffard" in each place the words "Lars Olsen" or "Olsen" appear therein.

188.    By these actions, Defendant Bouffard has deprived Plaintiff of rights secured by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, thereby causing Plaintiff harm resulting in damages.

### COUNT V:  DEFENDANT BARBARA HEATH

189.    Plaintiff realleges the statements contained in Paragraphs 1-188 as if more fully set forth herein.

190.    As psychologist for the Maine Youth Center, during the times relevant hereto, Defendant Barbara Heath was responsible for providing mental health assessment and treatment for Plaintiff and others, including but not limited to assessment of children who voiced suicidal thoughts or behaved in ways that elicited staff concern regarding a risk of self-harm to the child.

191.    As a staff psychologist, Defendant Heath was statutorily required to ensure that Plaintiff was placed in isolation only when Plaintiff's behavior presented a high likelihood of imminent harm to Plaintiff or to others, presented a substantial and imminent threat of destruction of property, or demonstrated a proclivity to be absent from the facility without leave, and she was required to ensure that Plaintiff not be held in isolation longer than necessary to alleviate and prevent the reoccurrence of that behavior, with the very specific statutory directive that isolation may not be used as punishment (34-A M.R.S.A. § 3809(2)).

192.    As a staff psychologist, Defendant Heath had responsibilities to ensure a physician or other medical staff visited Plaintiff each time isolation exceeded 12

hours, and at least once in each succeeding 24-hour period, and had a responsibility to ensure that LCYDC staff developed a plan for the further care of the juvenile each time placement in isolation exceeded 24 hours, which plan should have included the assessment and recommendations of Defendant Heath (34-A M.R.S.A. § 3809(2)).

193.    Defendant Heath failed to give due consideration to prior psychiatric and psychological diagnoses and failed to diagnose Plaintiff's serious mental health needs due to his depression, anxiety, and post traumatic stress disorder.

194.    Defendant Heath used the conduct disordered label with reckless disregard of the impact on Plaintiff's mental health to justify continued and prolonged isolation and the provision of less intensive psychological and psychiatric treatment and counseling services than required by Plaintiff's serious mental health problems.

195.    Defendant Heath failed to provide individual interventions in a meaningful way.

196.    Defendant Heath consistently failed, by herself and with others, to develop a plan for the further care of Plaintiff each time placement in isolation exceeded 24 hours.

197.    Even when it became apparent that Plaintiff was experiencing deteriorating mental health as a result of the improper reliance on isolation as the means of managing his behavioral problems, Defendant Heath failed to make recommendations for changes in the conditions of his confinement as required by

34-A M.R.S.A. § 3809, with deliberate indifference to the Plaintiff's serious medical needs.

198.    As a direct and proximate result of Defendant Heath's failure to take action to restrict excessive use of isolation, Plaintiff was confined in isolation for excessive periods of time, under conditions which did not conform to applicable federal and state standards, and under conditions which constituted cruel and unusual punishment in violation of his rights guaranteed in the Eighth Amendment to the United States Constitution, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and in violation of the laws of the State of Maine.

199.    Accepted practices mandate that a child should be restrained by mechanical means only as a precaution against escape, for medical reasons by direction of the medical officer, or to prevent self-injury or injury of others, and once applied, should only continue until the child is calm and compliant.

200.    Defendant Heath knew or should have known that mechanical restraints were being applied to Plaintiff frequently, as an improper means of behavior control, for punishment, in lieu of providing adequate mental health treatment intervention, or for other reasons not sanctioned by written policies, and for time periods far in excess of that even minimally justified by Plaintiff's behavior.

201.    As a direct and proximate result of Defendant Heath's actions as to excessive use of restraints, including failure to take action to enforce the written policy, Plaintiff was held in restraints for excessive periods of time, under conditions which did not meet applicable state policies, and under conditions which constituted

cruel and unusual punishment, all in violation of his rights guaranteed in the Eighth Amendment to the United States Constitution, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and in violation of the laws of the State of Maine.

202.   As a direct and proximate result of Defendant Heath's failure to adequately diagnose his mental health conditions and failure to rein in excessive use of isolation and excessive use of restraints, Plaintiff was subject to physical and psychological harm, all in violation of his rights guaranteed in the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and in violation of the laws of the State of Maine.

203.   As a direct and proximate result of Defendant Heath's breach of her statutory duty, Plaintiff suffered and continues to suffer serious mental anguish, psychological and emotional distress, physical pain and suffering, and lost earning capacity, some or all of which may be permanent.

204.   The actions of Defendant Heath, acting under color of state law, deprived Plaintiff of his rights, privileges, and immunities under the laws and Constitution of the United States; in particular, the right to be secure in his person, the right to be free from cruel and unusual punishment, and the right to due process.

205.   By these actions, Defendant Heath has deprived Plaintiff of rights secured by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United

States Constitution, in violation of 42 U.S.C. § 1983, thereby causing Plaintiff harm resulting in damages.

**COUNT VI:  DEFENDANTS SCOTT DEWITT, JEFFREY CAMPBELL, SHIRLEY J. ANTONOWICZ, ROBERT J. ALLENWOOD, JAMES M. HOGAN, [FIRST NAME UNKNOWN] JANASEK, MATTHEW NEE, SCOTT MCDONALD**

206.    Plaintiff realleges the statements contained in Paragraphs 1-205 as if more fully set forth herein.

207.    During times relevant hereto, Defendants identified in Count VI of this Complaint worked as Training School Counselor Supervisors and/or Training School Counselors at LCYDC.

208.    In violation of these Defendants' duty to treat and rehabilitate Plaintiff, Defendants routinely initiated placing or restraining Plaintiff in isolation as a means of punishment in violation of the standards for the use of isolation and routinely used physical mistreatment, excessive force, sexual contact, assault, negligence, infliction of emotional distress, and other tortious conduct as alleged in this Complaint against Plaintiff, causing physical and psychological injury to Plaintiff.

209.    As a direct and proximate result of Defendants' breach of their statutory duty, Plaintiff suffered and continues to suffer serious mental anguish, psychological and emotional distress, physical pain and suffering, and lost earning capacity, some or all of which may be permanent.

210.    The actions of Defendants, acting under color of state law, deprived Plaintiff of his rights, privileges, and immunities under the laws and Constitution of

the United States; in particular, the right to be secure in his person, the right to be free from cruel and unusual punishment, and the right to due process.

211.    By these actions, Defendants have deprived Plaintiff of rights secured by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, thereby causing Plaintiff harm resulting in damages.

## ADDITIONAL ALLEGATIONS RELEVANT TO ALL COUNTS

212.    Plaintiff realleges the statements contained in Paragraphs 1-211 as if more fully set forth herein.

213.    The Maine Department of Corrections ("DOC") is the governmental department of the State of Maine with primary responsibility for correctional programs, including juvenile correctional facilities such as the former Maine Youth Center, and has its principal office in the City of Augusta, County of Kennebec and State of Maine.

214.    It is clearly established that the Fourteenth Amendment's due process requirements prohibit juvenile correctional facilities from confining children in conditions that amount to punishment or that represent a substantial departure from accepted professional judgment.

215.    It is clearly established that the Fourteenth Amendment due process rights of a juvenile in its custody are violated if LCYDC staff exhibited deliberate indifference to the juvenile's medical needs that are equivalent to an intent to punish.

216.    During times in which Plaintiff was confined in isolation, Plaintiff was subjected to conditions that amounted to punishment and constituted a substantial deviation from accepted professional judgment.

217.    34-A M.R.S.A. § 3802 sets forth an example of the accepted professional judgment regarding the safeguards required when a juvenile correction facility places a child under observation or in isolation.

218.    DOC held Plaintiff in isolation units for extended periods in conditions that represented a substantial departure from 34-A M.R.S.A. § 3802.

219.    During Plaintiff's extended confinement in isolation, DOC staff demonstrated deliberate indifference to Plaintiff's medical and emotional needs that are equivalent to an intent to punish Plaintiff.

220.    During the periods when Plaintiff was placed in mechanical restraints, DOC staff demonstrated deliberate indifference to Plaintiff's medical and emotional needs that are equivalent to an intent to punish Plaintiff.

221.    DOC repeatedly and consistently placed Plaintiff in mechanical restraints for extended periods which demonstrated a substantial departure from DOC policies and procedures.

222.    During those periods when Plaintiff was held in mechanical restraints for extensive periods, LCYDC staff demonstrated deliberate indifference to Plaintiff's medical and emotional needs that are equivalent to an intent to punish Plaintiff.

## COUNT VII: DEFENDANT MAINE DEPARTMENT OF CORRECTIONS VIOLATION OF AMERICANS WITH DISABILITIES ACT

223.    Plaintiff realleges the statements contained in paragraphs 1-222 as if more fully set forth herein.

224.    Pursuant to 34-A M.R.S.A. § 1001, et seq., Maine DOC was at all times relevant hereto responsible for the administration of the State of Maine's correctional facilities, programs, and services for committed offenders, including juvenile clients committed to LCYDC and residing at LCYDC.

225.    At all times relevant hereto, as a department of the State of Maine, DOC was a public entity within the meaning of Title II of the Americans with Disabilities Act (42 U.S.C. § 12131, et seq.) ("ADA").

226.    As a public entity, pursuant to the ADA, DOC was subject to the requirement that no qualified individual with a disability shall, by reason of such disability, be excluded from participation or be denied the benefits of services, programs, or activities of that public entity or be subjected to discrimination by that entity.

227.    At all times relevant hereto during which Plaintiff was a juvenile client residing at LCYDC, Plaintiff was a qualified individual with a disability as defined by the ADA, and met the requirements for receipt of services, and/or the participation in programs, and/or activities provided by the DOC at LCYDC.

228.    During the course of Plaintiff's incarceration at LCYDC, Plaintiff suffered from PTSD and became increasingly depressed and anxious as a result of Defendants' conduct toward Plaintiff.

229.    Plaintiff's conditions remained or significantly increased in intensity as Plaintiff continued to be in the charge of LCYDC.

230.    During all relevant times hereto, Plaintiff's disabilities substantially limited one or more of the major life activities of Plaintiff.

231.    DOC may not discriminate against a qualified individual with a disability on the basis of his disability.

232.    DOC repeatedly excluded Plaintiff from participating in, and/or denied him the benefit of services, programs, or activities of the LCYDC, and/or subjected him to discrimination by removing him from the general LCYDC population, holding him in repeated and prolonged isolation, and holding him in mechanical restraints for unlawfully extended periods, thereby exacerbating his disabilities and intensifying their manifestations.

233.    Plaintiff's confinement in LCYDC isolation units greatly restricted his access to education, treatment and rehabilitation programs, limited his receipt of essential services, and did not allow him to reach the same level of achievement that was provided to others, and had the effect of excluding him from the service and treatment programs that were intended to rehabilitate him.

234.    The violations alleged in this complaint demonstrate Defendants' violations of Plaintiff's rights, as a juvenile detainee, to be secure in his person, to be free from cruel and unusual punishment, and to be entitled to due process pursuant to the rights secured by the Fourth, Fifth, Eighth, and Fourteenth

Amendments to the United States Constitution, and constitute a constitutional violation by the state.

235.    DOC's excessive and prolonged confinement of Plaintiff in isolation and DOC's failure to diagnose and treat treatable conditions which constituted a portion of Plaintiff's disabilities made Plaintiff's disabilities worse and deprived him of the ability to function in society in any meaningful way after his release.

236.    Defendants unreasonably refused to make modifications in policies, practices, customs, and procedures as applied to Plaintiff even though those modifications were necessary to avoid discrimination on the basis of disability and were necessary to avoid exacerbation of Plaintiff's disabilities.

237.    The policies, practices, customs, and procedures of the DOC in effect during the relevant time periods disproportionally impacted juvenile clients with mental or emotional disabilities, including Plaintiff, by making disabled persons more likely to be held in isolation and more likely to be subjected to mechanical restraints.

238.    As a direct and proximate result of this unlawful discrimination by DOC, Plaintiff suffered and continues to suffer serious mental anguish, psychological and emotional distress, physical pain and suffering, and lost earning capacity due to an inability to function in society.

239.    The actions of DOC deprived Plaintiff of his rights, privileges, and immunities under Title II of the ADA and under the laws and Constitution of the United States, in particular, the right to be secure in his person, the right to be free

from cruel and unusual punishment, and the right to due process secured by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

## COUNT VIII:  NEGLIGENCE

240.    Plaintiff repeats and realleges the preceding paragraphs 1-239, as if fully set forth herein.

241.    Defendants owed a duty of reasonable care to Plaintiff.

242.    Plaintiff was in the exercise of due care.

243.    Defendants negligently caused harm to Plaintiff.

244.    As a direct and proximate result of Defendants' actions, Plaintiff sustained severe injuries and damages.

WHEREFORE, Plaintiff prays for judgment in his favor, and against Defendants, with damages in such an amount as are just and proper, costs and attorney's fees.


## COUNT IX:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

245.    Plaintiff repeats and realleges the preceding paragraphs 1-244, as if fully set forth herein.

246.    The conduct of Defendants was extreme and outrageous.

247.    Defendants intentionally or recklessly caused severe emotional distress to Plaintiff.

248.    As a direct and proximate result of Defendants' conduct, Plaintiff sustained severe emotional distress and bodily harm.

WHEREFORE, Plaintiff, demands judgment in his favor, together with an award of damages, in an amount which is reasonable, and interest and costs.

## COUNT X:  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

249.    Plaintiff repeats and realleges all of the preceding paragraphs 1-248, as if fully set forth herein.

250.    Defendants owed a duty to Plaintiff and was bound to foresee psychic harm to Plaintiff because such harm reasonably could be expected to befall the ordinarily sensitive person.

251.    As a proximate result of  Defendants' negligent conduct, Plaintiff suffered severe emotional distress.

252.    Plaintiff's severe emotional distress was foreseeable.

WHEREFORE, Plaintiff prays for judgment in his favor, and against Defendants, with damages in such an amount as are just and proper, costs and attorney's fees.

## COUNT XI:  ASSAULT AND BATTERY

253.    Plaintiff repeats and realleges the foregoing paragraphs 1-252, as if fully set forth herein.

254.    Defendants intended to commit harmful or offensive touching or to create the apprehension of harmful or offensive touching to Plaintiff.

255.    Alternatively, Defendants were substantially certain that their conduct would proximately cause harmful or offensive touching to Plaintiff.

256.    Defendants proximately caused harmful or offensive touching to Plaintiff.

257.    Plaintiff did not consent to the touching.

258.    Plaintiff did not provoke or otherwise cause the touching, and was at all times in the exercise of reasonable care.

259.    As a direct and proximate result of Defendants' conduct, Plaintiff sustained damages.

WHEREFORE, Plaintiff demands judgment in his favor, together with an award of damages in an amount that is reasonable, and interest and costs.

## COUNT XII: VIOLATION OF 42 U.S.C. § 1983

260.    Plaintiff repeats and re-alleges the statements contained in paragraphs 1-259, if set forth fully herein.

261.    Defendants' conduct, including unlawful restraints and excessive force against Plaintiff were in violation of Plaintiff's federal and state constitutional rights, federal law described above,  and 42 U.S.C. § 1983.

262.    The acts of Defendants as related in this Complaint were performed under color of law.

263.    As a proximate result of Defendants' conduct, including excessive and unreasonable force, Plaintiff has suffered and continues to suffer physical and emotional pain and suffering, including permanent injuries as detailed above, mental and emotional distress, loss of earnings and earning capacity, all of which will continue in the future.

WHEREFORE, Plaintiff requests judgment against Defendants for compensatory damages, punitive damages, attorney's fees, together with interest and costs and such other and further relief as this Court deems just and appropriate

## COUNT XIII:  VIOLATION OF 42 U.S.C. § 1983

264.    Plaintiff repeats and re-alleges the statements contained in paragraphs 1-263, as if set forth fully herein.

265.    Defendants failed to take reasonable measures in their hiring, training, supervising and disciplining of guards and corrections officials, to ensure that such officials would not use unreasonable unconstitutional and/or excessive conduct or force in the course of their employment as corrections officials.

266.    Defendants adopted, established, implemented, promoted and/or approved of policies, practices and procedures inadequate as a matter of federal constitutional law to ensure that individual corrections officials adhered to standards of constitutional law in their use of force in connection with their duties.

267.    The acts of the Defendants as set forth in this Complaint were performed under color of law.

268.    The acts of Defendants, as set forth in this Complaint, violated Plaintiff's federal and state constitutional rights, federal law described above, and 42 U.S.C. § 1983.

269.    As a proximate result of the violation of Plaintiff's federal constitutional rights, Plaintiff has suffered and continues to suffer physical and emotional pain and suffering, including permanent injuries as detailed above,

mental and emotional distress, loss of earnings and earning capacity, all of which

will continue into the future.

WHEREFORE, Plaintiff requests judgment against Defendants for compensatory

damages, punitive damages, attorney's fees, together with interest and costs and

such other and further relief as this Court deems just and appropriate.

### COUNT XIV:  VIOLATION OF 42 U.S.C. § 1983

270.    Plaintiff repeats and re-alleges the statements contained in

paragraphs 1-269, as if set forth fully herein.

271.    As a pre-committed detainee in 2000, and as a committed detainee in

2002, Plaintiff's liberty interest was severely restrained or revoked by Defendants.

272.    Defendants, by their actions and omissions, affirmatively acted to

increase the threat of sexual assault which existed to Plaintiff, beyond which

otherwise existed including, without limitation, by confining Plaintiff in conditions

with adult detainees who had known violent and sexually violent proclivities, by

refusing or failing to recognize the threat to Plaintiff which was created by his

confinement with detainees who had known violent and sexually violent

proclivities, and by failing or refusing to provide protection to Plaintiff in light of

the known threats to his safety.

273.    Defendants' actions in their refusals or failures to protect Plaintiff

from sexual assault elevated the treat, and constitutes conduct that shocks the

conscience.

274.    Defendants' actions created violated Plaintiff's constitutional and civil rights.

275.    Defendants, as custodians and guardians of Plaintiff, were subject to a "special duty" to Plaintiff including, among other things, a duty to protect Plaintiff from physical harm and sexual violence.

276.    Defendants actions were performed under color of law.


**WHEREFORE**, Plaintiff requests this Court to award damages and such other relief as may be available at law or equity, jointly and severally, as follows:

1.    Damages, including damages for excessive confinement in isolation, excessive confinement in mechanical restraints, sexual contact, assault, denial of treatment and educational services to which he had a right, and physical and psychological injuries emotional anguish, and distress;

2.    Damages from the DOC for deterioration of Plaintiff's mental health, excessive confinement in isolation, excessive confinement in mechanical restraints, sexual contact, assault, and discriminatory exclusion from participating in or receiving the benefits of services, programs, or activities of the DOC, including: physical injury, psychological injury, emotional anguish, and distress;

3.    Damages for lost earnings and lost earning capacity;

4.    Damages for pain and suffering;

5.    Damages for past and future medical injuries and expenses, including mental health injuries and ongoing treatment;

6.    Punitive damages;

7.    Attorney's fees pursuant to 42 U.S.C. § 1988;

8.    Attorney's fees pursuant to 42 U.S.C. § 12131 et seq., and 28 C.F.R. 35.175;

9.      Such other and further legal, equitable and injunctive relief as justice may require.

Dated at Portland, Maine this 16th day of October, 2023.

/s/ Andrew P. Cotter
Andrew P. Cotter

/s/ Peter Clifford
Peter Clifford

/s/ James A. Clifford
James A. Clifford

Clifford & Clifford, LLC
10 Moulton Street, Floor 5
Portland, ME 04101
(207) 613-9465
andrew@cliffordclifford.com
peter@cliffordclifford.com
james@cliffordclifford.com